# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### ALEXANDRIA DIVISION

| | |
|---|---|
| JANE DOE | CIVIL ACTION NO. |
| *Plaintiff* | |
| | |
| v. | JUDGE |
| | |
| DOUGLAS CONSTANT, JR.; | MAGISTRATE |
| and UNKNOWN | |
| PERSONS 1-10 | |
| *Defendants.* | |

## VERIFIED COMPLAINT

Plaintiff Jane Doe ("Plaintiff" or "Doe"),[1] through undersigned counsel, files this Verified

Complaint against Defendants Douglas Constant, Jr. ("Constant"); and Unknown Persons 1-10

and in support thereof states as follows:

### INTRODUCTION

1.　　　On March 15, 2022, the President of the United States signed into law the Violence Against

Women Authorization Act of 2022. Section 1309 of the act is codified as 15 U.S.C. § 6851.

Subsection (b)(1) thereof creates a private right of action for victims of what is commonly referred

to as "revenge porn," *viz.:*

> In general. Except is otherwise provided in paragraph (4), an individual whose
> intimate visual depiction is disclosed, in or affecting interstate or foreign commerce
> or using any means or facility of interstate or foreign commerce, without the
> consent of the individual, where such disclosure was made by a person who knows
> that, or recklessly disregards whether, the individual has not consented to such

---

[1] Pursuant to 15 U.S.C. § 6851 (b)(3)(B), Plaintiff has filed this action using a pseudonym to protect her identity and her privacy. Plaintiff's identity is known to Defendants who received notification from undersigned counsel of the filing of this action. A verification with her true name is available to the Court upon request.

disclosure, may bring a civil action against that person in an appropriate district court of the United States for relief as set forth in paragraph (3).

15 U.S.C. § 6851(b)(1).

2.      This action is by Doe, a citizen of the Commonwealth of Australia and licensed Australian mental health professional, to recover damages against Douglas Constant for eight (8) distinct and separate instances where the Defendant, Mr. Constant through his own name or his alisas, triggered liability by sending highly intimate images he obtained without her consent in violation of the act to her family, landlord, friends, and others.

3.      For each violation of § 6851, a plaintiff "may recover…liquidated damages in the amount of $150,000 and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred." § 6851(b)(3)(A)(i). A plaintiff may also obtain "a temporary restraining order, a preliminary injunction, or a permanent injunction ordering the defendant to cease display or disclosure of the visual depiction." § 6851(b)(3)(B).

4.      In addition, Constant is alleged to have non-consensually taken several photographs and still shots of Doe in various stages of undress. Constant has also sent various threatening messages to Doe threatening to ruin Doe. Thus, Doe has brought state law tort claims against Constant under intentional infliction of emotional distress, negligence, and invasion of privacy amongst others.

**PARTIES**

5.      Plaintiff Jane Doe is an adult resident and citizen of the Commonwealth of Australia. Plaintiff requests anonymity under 15 U.S.C. § 6851 (b)(3)(B).

6.      Defendant Douglas Constant, Jr. ("Constant") is an adult resident of Rapides Parish, Louisiana and is a citizen of the State of Louisiana. Plaintiff alleges that Defendant Constant has also used the aliases of Leda Mancini ("Mancini") and Cullen Brennan ("Brennan").

7.      Unknown Person 1-10 are those persons, firms, corporations, limited liability companies, or other entities who are responsible to Plaintiff for the damages she has sustained and whose identities are unknown but will be added by appropriate amendments when ascertained. Any mention of the named Defendants incorporates by reference the Unknown Person Defendants.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action involves a federal question arising under 15 U.S.C. § 6851, the Violence Against Women Act.

9.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state-law claims because those claims arise out of the same nucleus of operative fact as the federal-question claim and form part of the same transaction and occurrence.

10.     In addition, this Court also has subject matter jurisdiction under 28 U.S.C. § 1332 because the Plaintiff and Defendants are citizens of different states for the purpose of Diversity jurisdiction and Plaintiff seeks damages in the excess of $75,000.

11.     This Court has personal jurisdiction over Defendant Constant because he is a citizen of the State of Louisiana and because Plaintiff's claims arise from Defendant's contact with the forum state.

12.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events, acts, or omissions giving rise to this action occurred in the Western District of Louisiana, from where Defendant committed the complained-of-acts and where Defendant resides.

## FACTS

13.     Doe is licensed psychologist who resides in Melbourne, Australia. Doe has close to a decade of experience providing psychological services in the Commonwealth of Australia.

14.     Constant is a married individual who resides in Boyce, Louisiana.

15.     Upon information and belief, Constant is or was previously employed with Roy O. Martin Lumber Company, LLC. ("Roy O. Martin").

16.     In 2019, Constant contacted Doe through use of the popular professional networking site, LinkedIn. Constant advised Doe that he was an executive coach who was divorced and heading up a large emotional intelligence project (the "EI Project").

17.     On Mr. Constant's LinkedIn Page, Mr. Constant describes himself as a "Dynamic Organizational Psychologist" and a "Positive Psychology Coach."



**Doug Constant** · 2nd
Dynamic Organizational Psychologist | Positive Psychology Coach |
Innovative Corporate Trainer | Architect of Professional Advancement |
Strategic Life & Career Design Consultant

Talks about #coachtraining, #corporatetraining, #leadershipcoaching, #positivepsychology, and #evidencebasedcoaching

18.     Upon information and belief, prior to and during his time of employment with Roy O. Martin, Constant was alleged to have represented he was in fact a psychologist and capable of leading such a project. His employment at Roy O Martin was used on his LinkedIn page to build

trust and he advised he would be promoted into the roles and functions listed on his LinkedIn page within Roy O Martin, to utilize his skills.

19.     However, according to the online license verification system with the Louisiana State Board of Examiners of Psychologists. Mr. Constant is not a licensed psychologist in the State of Louisiana. Upon information and belief, Mr. Constant is not a licensed psychologist in any jurisdiction.

20.     Under LA R.S. 37:2360 it is a crime "for any person not licensed… to represent himself as a psychologist." Furthermore, under the same state statute, it is a crime "for any person not licensed… to engage in the practice of psychology."

21.     After his introduction, Constant asked Doe to become involved in a "emotional intelligence" project. Specifically, Constant asked Doe to help develop various templates and strategy documents using, in part, her research and advisory input.

22.     Throughout his communications with Doe and others, Constant alleged that he was employed with Roy O. Martin. Constant represented to Doe that he was preparing for a promised role at the company. As such, Constant indicated that he was creating (with the help of others) an "emotional intelligence" project that would be eventually field tested at Roy O. Martin. Doe was advised that the organization was supportive of him undertaking this project. Constant provided the names of his supervisors whom he had discussed his eventual promotion and their involvement in later steps of the EI project.

23.     Separately, Constant contacted several other professionals, including psychologists and coaches, in different countries by way of LinkedIn and WhatsApp to establish a working group.

Constant and the newly created working group then created a separate Trello workspace[2]. Other meetings then occurred on other video conferencing platforms such as Zoom and Microsoft Teams.

24. Doe attended the meetings hosted by Constant. During the video conference meetings, Doe observed several professionals from around the globe. Doe also noticed that a high percentage of the attendees were female. Upon information and belief, Doe believes that Constant may have used this project, his qualifications, the reputation of his online network, the good reputation of his workplace and these meetings to meet other women and engage in other online sexual affairs.

25. Constant also invited Doe to attend online video conferences which were one on one to meet and interact with Doe. Some of these video conferences were hosted on WhatsApp service. On at least one occasion, a video conference was hosted on a dedicated Roy O. Martin video conference account.

26. Constant established his online bona fides utilizing his position at Roy O. Martin, his representations regarding the ongoing project, and his online representations of being an Executive Coach and "Organizational Psychologist" on his LinkedIn profile.

27. Eventually, Constant and Doe established an online friendship based on their academic interests and routine meetings regarding the project.

28. Constant and Doe continued their relationship on both LinkedIn, Email, WhatsApp and other various media applications.

29. Eventually, Constant and Doe's relationship became romantic. Constant bought and sent gifts to Doe.

30. Constant indicated that he was not married and that he had intended to relocate to Australia to continue the relationship between himself and Doe.

---

[2] Trello is an online group software application. *See* https://trello.com/.

31.     Having gained Doe's trust, and with pressure to maintain the quality of relationship Constant requested, Doe and Constant shared intimate details regarding their relationship. These included various times when Doe would meet with Constant on a video conferencing system.

32.     During these online video calls, Constant and Doe would be in various stages of undress and engaged in intimate activities. Doe was reassured by Constant and believed that these calls were kept solely private between her and Constant.

33.     Many of these calls took place while Constant was working at Roy O. Martin facilities. Specifically, Constant could be seen by Doe to either be in his office, a company training room, or a company restroom.

34.     During these calls, Constant was present in the Central Time Zone of the United States while Doe was located in the Australian Eastern Time Zone, approximately 15 hours ahead of Constant.

35.     During some of these calls, Doe could tell that Constant was supposedly working during normal business hours. Some of the calls included times where Doe could see that Constant was at Roy O. Martin facilities but, the time sometimes reflected that Constant was located there either late in the evening after work or early in the morning prior to work.

36.     On one occasion, Constant advised Doe that he had recently been disciplined for staying at the office too late or arriving too early.

37.     During several of these online calls, Constant took several pictures of Doe in stages of undress without her consent or knowledge.

38.     In mid-2023, Doe ended her relationship with Constant. Doe ended the relationship upon discovering numerous lies and misrepresentations made by Constant through his various communications with Doe.

39.     Doe also specifically blocked Constant's telephone number from contacting her.

40.     After meeting Constant, Doe was contacted by an individual by the name of Leda Mancini ("Mancini"). Mancini claimed to be a Clinical psychologist in the New Orleans, Louisiana area.

41.     Mancini approached Doe in the same manner Constant had through LinkedIn. Mancini approached Doe using her research and shared personal and professional interests to create a common bond.

42.     However, no individual by the name of Mancini is licensed by the Louisiana State Board of Examiners of Psychologists. Furthermore, no individual has ever been located using the name Leda Mancini residing in the New Orleans area or within the State of Louisiana. Through a subsequent forensic third-party investigation as detailed below, Mancini was determined to in fact be Constant and simply an alias and fake identity utilized by Constant.

43.     Doe was then forwarded several emails between Constant and the purported Mancini discussing Constant's relationship with Doe. Mancini's emails assumed the role of promoting Constant's good qualities and encouraging Doe to commence or continue a relationship with Constant.

44.     After meeting Constant, Doe was also approached by an individual named Cullen Brennan ("Brennan"). Brennan claimed to be a writer and publisher with Simon and Schuster and a psychologist and executive coach. Brennan claimed to be from the Miami, Florida area.

45.     However, no individual by the name of Cullen Brennan is licensed by the Florida Board of Psychology. No individual has ever been located using the name Cullen Brennan residing in the Miami area or within the State of Florida. Furthermore, the name Cullen Brennan is not listed on Simon and Schuster's extensive list of associated authors.[3]  Through a subsequent forensic third-

_____

[3] *See*, https://www.simonandschuster.com/authors/browse/B.

party investigation as detailed below, Brennan was determined to in fact be Constant and simply an alias and fake identity utilized by Constant.

46. Brennan, similar to Mancini and Constant, also contacted Doe through her LinkedIn profile. Brennan himself attempted to lure Doe into a sexual relationship with either him or with Brennan and Mancini. Doe refused.

47. In late 2023, Constant represented to Doe that Brennan had used mirroring software to steal all of Constant's WhatsApp data, including several sexual images of Doe which had been taken without Doe's consent.

48. Shortly thereafter, Constant (through an email address associated with his fake identity Brennan) began sending the explicit photos of Doe taken by Constant to her family, friends, colleagues, and her office landlord.

49. On or about August 2, 2023, at approximately 10:51AM Australia Eastern Dateline Time ("AEDT"), Constant (through an email address associated with his fake identity Brennan) sent an email to Doe's father-in-law, attaching copies of three (3) non-consensual photographs of Doe in various stages of undress. *See,* P's Ex. A

50. On or about November 7, 2023, at approximately 2:42 PM AEDT, Constant (using his alias and fictious identity of Brennan) caused an email to be sent to Doe with thirteen (13) separate photographs of Doe in various stages of undress. The email implies that the photos will be sent to Doe's family. *See*, P's Ex. B

51. On or about November 10, 2023, at approximately 7:33AM AEDT, Constant (through a second email address associated with his fake identity Brennan) sent another email to Doe's high school friend, and a second email address not familiar to Doe, attaching one (1) copy of a non-consensual photograph of Doe without her clothes on. *See,* P's Ex. C.

52.     On or about November 10, 2023, at approximately 10:04AM AEDT Constant (through yet another email address associated with his fake identity Brennan) sent another email to Doe's father-in-law, Doe's best friend, and Doug Constant, attaching one (1) copy of a non-consensual photograph of Doe without her clothes on. *See,* P's Ex. D.

53.     To further perpetuate his lies and manipulation of the situation, Constant then forwarded the aforementioned email he was purportedly copied on to Doe.  In that email, Constant states "It has a nude picture of you that I've never seen." *See,* P's Ex. E However, Constant will later contradict himself with his admission to Doe that he "inadvertently" snapped photos during their video calls.

54.     On or about November 10, 2023, at approximately 2:56 PM AEDT, Constant (through one of the prior email addresses associated with his fake identity Brennan) sent another email to Doe's brother, sister-in-law, brother-in-law, and a close friend, attaching one (1) copy of a non-consensual photograph of Doe without her clothes on, also the same photograph referenced in Paragraph 58, *supra. See,* P's Ex. F

55.     On or about November 10, 2023, at approximately 4:28 PM AEDT, Constant (through one of the prior email addresses associated with his fake identity Brennan) sent another email to Doe's high school friend and Doe herself, attaching one (1) copy of a non-consensual photograph of Doe in the nude. *See,* P's Ex. G.

56.     On or about November 10, 2023, at approximately 4:51 PM AEDT, Constant (through one of the prior email addresses associated with his fake identity Brennan) sent another email to Doe's sister-in-law, brother-in-law, father-in-law, the high school friend, a university friend, and again an email address not recognized by Doe, attaching one (1) copy of a non-consensual photograph of Doe without her clothes on. *See,* P's Ex. H.

57.     On or about November 11, 2023, at approximately 12:02 PM AEDT, Constant (through one of the prior email addresses associated with his fake identity Brennan) sent another email to Doe's sister-in-law, the previously mentioned email address not recognized by Doe, her father-in-law, her university friend, her high school friend and Doug Constant, attaching two (2) copies of a non-consensual photographs of Doe without her clothes on. *See,* P's Ex. I.

58.     On or about November 11, 2023, at approximately 2:41 PM AEDT, Constant (through one of the prior email addresses associated with his fake identity Leda Mancini) sent an email to Doe's brother-in-law, the unrecognized email address, university friend, sister-in-law, and the high school friend, attaching two (2) copies of a non-consensual photograph of Doe without her clothes on. *See,* P's Ex. J.

59.     More recently, Constant (through another email address associated with his fake identity Brennan) has sent emails to Doe threatening to send the media to various professional regulatory bodies in the Commonwealth of Australia.

60.     In several emails, Constant (through another email address associated with his fake identity Brennan) claims to seek "closure" from Doe and demands Doe to admit to the relationship with Constant to her family or he will disclose the photographs.

61.     Facing daily threats of the disclosure of highly intimate and non-consensually taken photos, Doe retained, at her own expense, the services of a private investigative and forensic research firm in Australia.

62.     Investigators at that firm determined that Constant's mobile telephone number 318-730-9668, was linked to an online Telegram profile using the username: ManciniLeda.  Furthermore, the firm found that at least one of the emails used by Mancini, ledamancini@yahoo.com, was in fact linked to a partial mobile phone number (3\*\*) \*\*\*-\*\*68, matching that of Constant's.

63.     Utilizing advanced facial recognition software, the same investigative firm determined that a photo sent to Doe purporting to be that of Mancini was in fact a third-party female in Lafayette, Louisiana whose Instagram account is followed and monitored by Constant.

64.     In addition, an email header analysis identified that one of Mancini's email was in fact linked to an IP address (12.185.253.190) hosting the subdomains for Roy O. Martin, Constant's employer. When compared to Constant's emails from PyschCoach@mail.com, the same domain was noted on his emails to Doe. In short, both Mancini's and Constant's emails linked to an IP address of Constant's employer, Roy O. Martin.

65.     Investigators from the same firm also determined that one of Brennan's email addresses. (ozpsychethics@mailfence.com) was in fact the recovery email for one of Mancini's email addresses (LedaMancini@mail.com). Thus, these Brennan and Mancini email accounts were found to be linked and believed to be utilized and operated by the same individual.

66.     In January of 2024, the above investigation firm sent a unique tracking link to the emails utilized by Constant, Mancini, and Brennan. The email address linked to IP addresses at either Roy O. Martin, Constant's employer, or to IP addresses in the Alexandria, Louisiana area.

67.     Based on the findings above, Constant has created these fictitious identities of Mancini and Brennan for the purposes of harassing, intimidating, and distributing non-consensual photos of Doe.

68.     Recently, Doe has become aware of two separate YouTube videos regarding Constant posted under the YouTube account @DougIsGoingToPrison[4].

---

[4] *See,* https://www.youtube.com/@DougIsGoingToPrison.

69.     On December 23, 2009, a video was posted under the above YouTube account titled "Doug Constant Arrest.avi."[5] The video depicts an NBC local news affiliate's report detailing Mr. Constant's arrest for fraud. In particular, the report details that Constant had been employed teaching classes as part of a court-ordered program for offenders.  During the scope and course of his duties, Constant signed course completion forms without offenders completing the course in exchange for monies.

70.     After a diligent investigation into Constant's criminal background, it was discovered that Constant was arrested on May 10, 2011, for violating LA R.S. § 14:35 (Simple Battery), LA R.S. § 14:38 (Simple Assault) and LA R.S. § 14:108 (Resisting an Officer).  Upon information and belief, Constant was charged with these crimes after a domestic disturbance between himself and his former female business associate.[6]

71.     Based on the domestic disturbance charges and public records charges, Constant accepted a global plea deal and was convicted of four (4) counts of felony Injuring of Public Records and Simple Battery.[7]

72.     Also on December 31, 2009, a video was posted under the above YouTube account titled "Doug Constant Arrest for FELONY THEFT."[8] The video depicts an ABC local news affiliate's report detailing Mr. Constant's arrest for felony theft. As reported, Constant, a then former probation counselor who had been approved to provide counseling services for theft, anger management, and substance abuse, had been charged with stealing video games a year prior.

---

[5] *See* https://www.youtube.com/watch?v=R9KQ0sOGIPo.
[6] *State of Louisiana v. Douglas Constant*, Cause No. 307286, 9th Judicial District Court for the Parish of Alexandria.
[7] *Id*; *State of Louisiana v. Douglas Constant*, Cause No. 303489, 9th Judicial District Court for the Parish of Alexandria.
[8] *See* https://youtu.be/PMWOAERRehQ?si=aumAWuevfgfCeRVX.

73.    Subsequent investigation has determined that as part of the aforementioned plea deal accepted by Constant, he received a sentence that included ten years, seven of which was suspended. In addition, Constant was ordered to pay $3,000.00 in restitution to Game Stop, ordered to attend and complete domestic abuse prevention and perform thirty-two hours of community service. Constant was also sentenced to six (6) months concurrent for the battery conviction, with credits for time served. See P's Ex. R

74.    Constant has also twice been accused of staking and various forms of continuing harassment and abuse. In 2003, Constant was accused by a former female employee of stalking, verbally harassing, and threating her after she had left his employment.[9]  See P's Ex. S

75.    In 2005 and 2010, Constant's former spouse sought and obtained a temporary restraining order based on alleged violence committed against her. [10] See P's Ex. T.  Within the same matter, Constant's former spouse sought and obtained a mental health evaluation based, in part, on his attempt to commit suicide. See P's Ex. U

76.    Court records in the above-mentioned causes establish a pattern of alarming and escalating criminal behavior.

77.    Similar alarming behavior is now directed primarily at Doe.

78.    On or about January 16, 2024, Constant (through his fictious identity Brennan) emailed Doe's landlord, academic regulatory organization, and Doe's in-laws untruthfully alleging that Doe had conducted paid online sexual activities in her office. P's Ex. K.

79.    On February 1, 2024, Constant responded to a Gmail email address ("Doe Fictious Email") which purported to be Doe while also copying Doe's known email address. Doe Fictious Email

---

[9] *Robinson v. Constant,* 9th JDC Docket No.: 213,395
[10] *Constant v Constant*, 9th JDC Docket No: 222,016.

bears a name address that is similar to Doe. However, Doe Fictious Email is not nor has ever been an email that Doe has used, owned, or controlled.  P's Ex. L.

80.     Upon information and belief, the fictious email, adapted using Doe's name, was in fact another fictious email created by Constant as another ploy to harass, annoy, and threaten Doe.

81.     Constant sent the above message as an attempt to harass, annoy, threaten and damages Doe for no longer wishing to be in a relationship with Constant.

82.     During his February 1, 2024 email, Constant admitted from his own email and in his own words that he had taken nonconsensual nude photographs but had "responsibly deleted the 22 sex pictures [he] inadvertently took." P's Ex. L.

83.     In an attempt to cover his tracks, Constant represented that Brennan had been responsible for accessing his computer and that the materials had been hacked.

84.     Upon information and belief, Constant has not deleted such materials and continues to maintain such materials.

85.     In addition, Constant indicated in two separate statements that he had "setup [his] phone to quickly take screenshots for work-related Zoom sessions."

86.     On or about February 6, 2024, Doe retained undersigned counsel and sent a cease-and-desist letter to Douglas Constant via email, USPS Certified Mail and USPS First Class Mail. *See* P's Ex. M.  In addition, undersigned counsel sent a letter the Rapides District Attorney requesting that Constant's activities be investigated and criminally prosecuted under LA R.S. 14:283.2. *See*, P's Ex. N.

87.     Upon further information and belief, Roy O. Martin maintains digital evidence regarding this matter and the allegations above on Constant's former issued computer by Roy O. Martin and upon the computer and telecommunications systems of Roy O. Martin.

88.     Doe, through undersigned counsel, sent a notice under Fed. R. Civ. Pro 37(e) to Roy O. Martin to preserve any and all electronically stored information related to this matter. *See* P's Ex. O.

89.     Upon information and belief, Constant has been either suspended or terminated from his employment with Roy O. Martin.

90.     On or about April 16, 2024, despite Doe's cease and desist notice [P's Ex. M.], Constant reinitiated contact with Doe using text messages to her mobile phone.  In the communication, Constant indicated that he "travel[s] there often." P's Ex. P.

91.     On or about, April 10, 2024, Constant emailed Doe stating "Baby, please know the Prince is here in this life and wants to destroy you....and me. You can stop him. But we have to unite. Don't let him destroy us both. I am on the verge of suicide to save us both." *See* P's Ex. Q.

92.     Despite the prior cease and desist letter, Constant continues to contact Doe through other online electronic communications. On or about April 17, 2024, Constant attempted to contact Doe through email, electronic messaging and through telephone calls to her mobile phone.

93.     In addition to the prior disclosures, Doe is concerned and fearful that Constant will make other disclosures of intimate materials to family, friends, and business associates; continue to contact and harass her using online and telephone communication; and physically attempt to visit her or harm her.

## COUNT I
### Violation of 15 U.S.C. § 6851(b)
### (Civil Action relating to disclosure of intimate images)
### (Email Dated August 2, 2023 10:51 AM AEDT)

94.     Doe re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

95. The photographs Constant surreptitiously took, and subsequently transmitted through interstate commerce, constitute "commercial pornographic content" and / or an "intimate visual depiction" as defined by 15 U.S.C. 6851(a)(1) & (5).

96. The photographs Constant surreptitiously took, and subsequently transmitted through interstate commerce, was obtained and transmitted without Doe's knowledge or consent, and the photograph was procured by fraudulent concealment.

97. The photographs Constant surreptitiously took, and subsequently transmitted through interstate commerce, included Doe as a "depicted individual" as defined by 15 U.S.C. § 6851(a)(3). Doe's likeness and distinguishing characteristics were recognizable in the photograph, and Constant transmitted it to a recipient who knew the photograph depicted Doe and told the recipient that the photo was in fact Doe.

98. Constant obtained the photos without Doe's consent, stored them and transmitted the photos knowing that Doe had not given consent or with reckless disregard as to Doe's lack of consent.

99. Constant transmitted these photographs in an attempt to threaten, harm, annoy, embarrass, injure and harm Doe.

100. On August 2, 2023 at 10:51AM AEDT, Constant, using an alias, transmitted a photograph that he took of Doe without her consent to Doe's family.

101. This picture was taken without Doe's consent and transmitted through interstate commerce.

102. Pursuant to 15 U.S.C. 6851(b)(1)(A) & (b)(3)(A)(i), Doe is entitled to recover from Constant the greater of: (1) her actual damages; or (2) statutory liquidated damages of $150,000 for each violation. In addition, Doe is entitled to recover from Constant her costs of this action and reasonable attorney's fees.

103.    Pursuant to 15 U.S.C. §§ 6851(b)(1)(A) & (b)(3)(A)(ii), Doe is entitled to injunctive relief which should require Constant to: (1) return and destroy the photograph and all copies of it; and (refrain from transmitting or using the photograph.

## COUNT II
### Violation of 15 U.S.C. § 6851(b)
### (Civil Action relating to disclosure of intimate images)
### (Email Dated November 10, 2023 7:33 AM AEDT).

104.    Doe re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

105.    On November 10, 2023 at 7:33 AM AEDT, Constant, using an alias, transmitted a photograph that he took of Doe without her consent to Doe's friend and landlord.

106.    This picture was taken without Doe's consent and transmitted through interstate commerce.

107.    Pursuant to 15 U.S.C. 6851(b)(1)(A) & (b)(3)(A)(i), Doe is entitled to recover from Constant the greater of: (1) her actual damages; or (2) statutory liquidated damages of $150,000 for each violation. In addition, Doe is entitled to recover from Constant her costs of this action and reasonable attorney's fees.

108.    Pursuant to 15 U.S.C. §§ 6851(b)(1)(A) & (b)(3)(A)(ii), Doe is entitled to injunctive relief which should require Constant to: (1) return and destroy the photograph and all copies of it; and (refrain from transmitting or using the photograph).

## COUNT III
### Violation of 15 U.S.C. § 6851(b)
### (Civil Action relating to disclosure of intimate images)
### (Email Dated November 10, 2023 10:04 AM AEDT).

109.    Doe re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

110. On November 10, 2023 at 10:04 AM AEDT, Constant, using an alias, transmitted a photograph that he took of Doe without her consent to Doe's friend and other professional associates.

111. This picture was taken without Doe's consent and transmitted through interstate commerce.

112. Pursuant to 15 U.S.C. 6851(b)(1)(A) & (b)(3)(A)(i), Doe is entitled to recover from Constant the greater of: (1) her actual damages; or (2) statutory liquidated damages of $150,000 for each violation. In addition, Doe is entitled to recover from Constant her costs of this action and reasonable attorney's fees.

113. Pursuant to 15 U.S.C. §§ 6851(b)(1)(A) & (b)(3)(A)(ii), Doe is entitled to injunctive relief which should require Constant to: (1) return and destroy the photograph and all copies of it; and (refrain from transmitting or using the photograph.

## COUNT IV
### Violation of 15 U.S.C. § 6851(b)
### (Civil Action relating to disclosure of intimate images)
### (Email Dated November 10, 2023 2:56 PM AEDT).

114. Doe re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

115. On November 10, 2023 at 2:56 PM AEDT, Constant, using an alias, transmitted a photograph that he took of Doe without her consent to Doe's friends and family.

116. This picture was taken without Doe's consent and transmitted through interstate commerce.

117. Pursuant to 15 U.S.C. 6851(b)(1)(A) & (b)(3)(A)(i), Doe is entitled to recover from Constant the greater of: (1) her actual damages; or (2) statutory liquidated damages of $150,000 for each violation. In addition, Doe is entitled to recover from Constant her costs of this action and reasonable attorney's fees.

118. Pursuant to 15 U.S.C. §§ 6851(b)(1)(A) & (b)(3)(A)(ii), Doe is entitled to injunctive relief which should require Constant to: (1) return and destroy the photograph and all copies of it; and (refrain from transmitting or using the photograph).

**<u>COUNT V</u>**
**Violation of 15 U.S.C. § 6851(b)**
**(Civil Action relating to disclosure of intimate images)**
**(Email Dated November 10, 2023 4:28 PM AEDT).**

119. Doe re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

120. On November 10, 2023 at 4:28 PM AEDT, Constant, using an alias, transmitted a photograph that he took of Doe without her consent to Doe's friend.

121. This picture was taken without Doe's consent and transmitted through interstate commerce.

122. Pursuant to 15 U.S.C. 6851(b)(1)(A) & (b)(3)(A)(i), Doe is entitled to recover from Constant the greater of: (1) her actual damages; or (2) statutory liquidated damages of $150,000 for each violation. In addition, Doe is entitled to recover from Constant her costs of this action and reasonable attorney's fees.

123. Pursuant to 15 U.S.C. §§ 6851(b)(1)(A) & (b)(3)(A)(ii), Doe is entitled to injunctive relief which should require Constant to: (1) return and destroy the photograph and all copies of it; and (refrain from transmitting or using the photograph.

**<u>COUNT VI</u>**
**Violation of 15 U.S.C. § 6851(b)**
**(Civil Action relating to disclosure of intimate images)**
**(Email Dated November 10, 2023 4:51 PM AEDT).**

124. Doe re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

125.     On November 10, 2023 at 4:51 PM AEDT, Constant, using an alias, transmitted a photograph that he took of Doe without her consent to Doe's friends and family.

126.     This picture was taken without Doe's consent and transmitted through interstate commerce.

127.     Pursuant to 15 U.S.C. 6851(b)(1)(A) & (b)(3)(A)(i), Doe is entitled to recover from Constant the greater of: (1) her actual damages; or (2) statutory liquidated damages of $150,000 for each violation. In addition, Doe is entitled to recover from Constant her costs of this action and reasonable attorney's fees.

128.     Pursuant to 15 U.S.C. §§ 6851(b)(1)(A) & (b)(3)(A)(ii), Doe is entitled to injunctive relief which should require Constant to: (1) return and destroy the photograph and all copies of it; and (refrain from transmitting or using the photograph).

**COUNT VII**
**Violation of 15 U.S.C. § 6851(b)**
**(Civil Action relating to disclosure of intimate images)**
**(Email Dated November 11, 2023 12:02 PM AEDT).**

129.     Doe re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

130.     On November 11, 2023 at 12:02 PM AEDT, Constant, using an alias, transmitted a photograph that he took of Doe without her consent to Doe's friend and family.

131.     This picture was taken without Doe's consent and transmitted through interstate commerce.

132.     Pursuant to 15 U.S.C. 6851(b)(1)(A) & (b)(3)(A)(i), Doe is entitled to recover from Constant the greater of: (1) her actual damages; or (2) statutory liquidated damages of $150,000 for each violation. In addition, Doe is entitled to recover from Constant her costs of this action and reasonable attorney's fees.

133.    Pursuant to 15 U.S.C. §§ 6851(b)(1)(A) & (b)(3)(A)(ii), Doe is entitled to injunctive relief which should require Constant to: (1) return and destroy the photograph and all copies of it; and (refrain from transmitting or using the photograph.

**COUNT VIII**
**Violation of 15 U.S.C. § 6851(b)**
**(Civil Action relating to disclosure of intimate images)**
**(Email Dated November 11, 2023 2:41 PM AEDT).**

134.    Doe re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

135.    On November 11, 2023 at 2:41 pM AEDT, Constant, using an alias, transmitted a photograph that he took of Doe without her consent to Doe's friend and family.

136.    This picture was taken without Doe's consent and transmitted through interstate commerce.

137.    Pursuant to 15 U.S.C. 6851(b)(1)(A) & (b)(3)(A)(i), Doe is entitled to recover from Constant the greater of: (1) her actual damages; or (2) statutory liquidated damages of $150,000 for each violation. In addition, Doe is entitled to recover from Constant her costs of this action and reasonable attorney's fees.

138.    Pursuant to 15 U.S.C. §§ 6851(b)(1)(A) & (b)(3)(A)(ii), Doe is entitled to injunctive relief which should require Constant to: (1) return and destroy the photograph and all copies of it; and (refrain from transmitting or using the photograph.

**COUNT IX**
**Invasion of Privacy – Intrusion upon Seclusion**

139.    Doe re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

140.    Doe had a reasonable expectation of privacy in the intimate acts above and the depictions of her in various stages of undress.

141.    Constant's interference with Doe's expectation of privacy (i.e., her seclusion) is highly offensive to an ordinary, reasonable person, as the result of conduct to which a reasonable person would strongly object.

142.    Constant acted in bad faith and / or with utter recklessness and disregard in photographing, without Doe's consent, and then disseminating Doe's performance of an intimate, sexual act.

143.    Accordingly, Doe is entitled to recover from Constant compensatory damages and all other damages allowed by law in an amount to be established at trial.

## COUNT X
### Invasion of Privacy – Public Disclosure of Private Facts

144.    Doe re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as if full set forth herein.

145.    As a direct and proximate cause of Constant's actions, Constant gave publicity to a matter concerning the private life of Plaintiff. This publicity and disclosure would be highly offensive to a reasonable person and was not of a legitimate concern of public interest.

146.    Constant's intentional and reckless actions taken in publishing the private intimate images information are actionable under La. Civil Code Article 2315 and have caused Plaintiff to suffer an invasion of privacy, embarrassment, and continuing emotional distress.

147.    Accordingly, Doe is entitled to recover from Constant compensatory damages and all other damages allowed by law in an amount to be established at trial.

## COUNT XI
### Intentional Infliction of Emotional Distress

148.    Doe re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as if full set forth herein.

149.     On several different occasions, Constant intentionally published the aforesaid sexually explicit photographs and intimate material and further complained, under his known aliases, to Plaintiffs friends, family member, landlord, academic regulatory organization and has made threats to do so to others. Constant engaged in such outrageous conduct no tolerated in a civil society.

150.     Constant's actions were designed to inflict severe emotional distress or that he knew that severe emotional distress would be certain or substantially certain to result from his continuing contact.

151.     By doing so, Constant has caused severe mental injury to Plaintiff, causing her to suffer sleepless nights, depression, and anxiety. Plaintiff has obtained significant mental health treatment as a result of her injuries and continues to do so.

152.     Accordingly, Doe is entitled to recover from Constant compensatory damages and all other damages allowed by law in an amount to be established at trial.

## COUNT XII
### Negligence

153.     Doe re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as if full set forth herein.

154.     Doe pleads in the alternative that Constant obtained certain non-consensual pictures or information regarding Doe that was confidential, highly sensitive, and of a nature to require a duty by Defendant to protect such information.

155.     Defendant Constant failed to protect and keep secret such information from third parties.

156.     Defendant's negligence caused such information to be distributed to third parties thus causing Doe emotional, mental health damages, and other damages.

157.     Accordingly, Doe is entitled to recover from Constant compensatory damages and all other damages allowed by law in an amount to be established at trial.

## REQUEST FOR INJUNCTIVE RELIEF

158.   Doe re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as if full set forth herein.

159.   Plaintiff seeks a temporary restraining order, preliminary injunction, a permanent injunction ordering Constant to cease display or disclosure of the visual depictions reference herein pursuant to 6851(b)(3)(B), and to refrain from contacting either directly or indirectly regardless if through his own name or that of his aliases and from coming within 1000 feet of Plaintiff, any member of Plaintiff's family, or any person known to be associated with Plaintiff or her business.

160.   In view of the recent attempts to contact Plaintiff despite delivery of the cease-and-desist letter by undersigned counsel and Constant's declarations that he "travels there often;" that he is "on the verge of suicide;" and that "Prince is here in this life and want to destroy you;" Plaintiff has and continues to suffer mental, emotional and stress related physical health damages including worry of her, her family and friends safety.  Plaintiff also asserts that immediate and irreparable injury, loss, or damage may occur to Plaintiff's person and reputation (or to the persons of her family, friends, associates, business, clients, and coworkers) before Constant can be heard in opposition. Further, nothing presently prevents Constant from issuing further disclosures of the aforementioned intimate visual depictions to others.

161.   Plaintiff also seeks a preliminary injunction and a permanent injunction pursuant to 6851(b)(3)(B), which provides that "the court may grant injunctive relief maintaining the confidentiality of a plaintiff using a pseudonym."

## PRAYER FOR RELIEF

162.   Doe re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as if full set forth herein.

163.     As a direct and proximate result of Constant's acts, Doe has been damaged and is entitled to the following relief:

     a.   For Count One – Eight, the greater of her actual damages or statutory liquidated damages of $150,000 per each violation for an aggregate amount of $1,200,000;

     b.   Compensatory damages in an amount to be determined by this Court and established at trial for all Louisiana State law claims;

     c.   Reasonable attorney's fees pursuant to 15 U.S.C. § 6851(b)(3)(A)(i);

     d.   Court costs pursuant to 15 U.S.C. § 6851(b)(3)(A)(i);

     e.   All reasonable costs of litigation pursuant to 15 U.S.C. § 6851(b)(3)(A)(i);

     f.   Pre and Post judgement interest as allowed by law;

     g.   Any additional relief in law or equity to which she may be entitled.

## JURY DEMAND

164.     Doe demands a jury on all issues so triable.

THEREFORE, Plaintiff prays for a temporary restraining order, preliminary injunction, and a permanent injunction that will order the Defendant (1) to refrain from contacting or coming within 1,000 feet of Plaintiff, any member of Plaintiff's family, or any person known to be associated with Plaintiff; (2) to refrain from disclosing any intimate visual depictions of the Plaintiff; and (3) to refrain from disclosing the true identify of Doe to any other person.

The Plaintiff prays for all other general relief, whether legal or equitable, that this Court deems sufficient.

**Dated: April 25, 2024.**

              **Respectfully Submitted,**

              **J. W. BEARDEN & ASSOCIATES, PLLC**

*/s/ Wes Bearden*
**James Wesley Bearden**
LA Bar No. 30004
TX Bar No. 24071964
110 Veterans Memorial Blvd. Suite 500
Metairie, Louisiana 70005
(504) 930-4330 (Tel)
(888) 731-6940 (Fax)

Email: wes@beardenlawfirm.com

**Attorneys for Plaintiff**

Vinesign Document ID: 24E4421B-C530-4972-967C-9C75A60E8D5A

## 28 U.S.C. § 1746 DECLARATION OF JANE DOE

I verify under penalty of perjury under the laws of the United States of America that the foregoing Verified Complaint is true and correct.

Executed on April 25, 2024

*Jane Doe*

JANE DOE

The signed document can be validated at https://app.vinesign.com/Verify