## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

| | |
|---|---|
| **JANE DOE** | **CIVIL ACTION NO. 24-554** |
| **VERSUS** | **JUDGE EDWARDS** |
| **DOUGLAS CONSTANT** | **MAG. JUDGE PEREZ-MONTES** |

### MEMORANDUM ORDER

Before the Court is Plaintiff's request for a Preliminary Injunction (R. Docs. 1 and 2).[1]  An evidentiary hearing was held on June 26, 2024.  Plaintiff, her counsel, and Defendant (appearing pro se) were present.[2]  The Court indicated at the close of the hearing that it would issue a written ruling on the preliminary injunction, and this Order follows.

Based on the filings before the Court (R. Docs. 1, 2, 20), the evidence taken at the hearing, and the parties' arguments, Plaintiff's request for a Preliminary Injunction is **GRANTED.**

---

[1] Plaintiff's Complaint and Motion for Temporary Restraining Order ask for a temporary restraining order, preliminary injunction, and permanent injunction.  Since the Court has already issued a temporary restraining order, this Order is confined to whether a preliminary injunction should issue as well.  *See* R. Doc. 4.

[2] This hearing was continued three times at the request of Defendant. First, the Defendant was unavailable. *See* R. Doc. 8. The subsequent two continuances were to allow time for Defendant to obtain counsel and gather evidence to oppose the injunction. R. Docs. 13 and 16.  Despite these continuances, no counsel has enrolled for Defendant and Defendant did not present any evidence at the hearing.

1

## I.    BACKGROUND

Plaintiff[3] alleges that Defendant Douglas Constant, Jr. ("Defendant") surreptitiously acquired nude photographs of Plaintiff and distributed them on multiple occasions to her "family, friends, colleagues, and her office landlord." R. Doc. 1 at 9.  She alleges that Defendant has additionally threatened to send these photographs to various regulatory bodies that govern her profession. *Id.* at 11.  She alleges that Defendant "demands [Plaintiff] to admit to the relationship with [Defendant] to her family or he will disclose the photographs"; and that he continues to contact her, even after her attorney sent Defendant a cease-and-desist notice.  *Id.* at 11, 16.  She further alleges that Defendant has threatened suicide when faced with Plaintiff's non-response.  *Id.* at 16.  Plaintiff employed an investigative firm that purportedly linked the various I.P. addresses, e-mail addresses, phone numbers, and online accounts utilized in these events back to Defendant.  *Id.* at 11-12.  Accordingly, Plaintiff brings claims for unauthorized disclosure of intimate images under the Violence Against Women Reauthorization Act (VAWRA), 15 U.S.C. § 6851, and state tort claims.  *Id.* at 16–26.

Defendant opposes the issuance of a preliminary injunction.  R. Doc. 20.  Foremost, he "categorically den[ies] the allegations brought forth by Jane Doe, the Plaintiff."  *Id.* at 1.  He asserts that he "did not send any nude pictures of the Plaintiff to anyone"; but rather, that "these pictures [were distributed] by Cullen Brennan."  *Id.* at 4, 2.  Further, Defendant asserts that "[t]he incidents cited [by Plaintiff] fail to

---

[3] Plaintiff has been allowed to pursue this action under a pseudonym as provided by 15 U.S.C. § 6851(b)(3)(B).  R. Doc. 16.

demonstrate a persistent pattern of behavior that would warrant a preliminary Injunction." *Id.* at 4. Accordingly, Defendant concludes that "Plaintiff has not demonstrated a likelihood of irreparable harm or a substantial likelihood of success on the merits." *Id.*

At the hearing, Plaintiff's counsel elicited testimony from Plaintiff and her private investigator, Dan Halpin. Plaintiff's counsel also produced the communications containing the intimate visual depictions of Plaintiff and the investigator's written report. The Defendant chose to only cross-examine the Plaintiff. The Defendant did not produce any rebuttal evidence.

## II.   LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).

## III.   ANALYSIS

### A. Likelihood of Success on the Merits

While Defendant disputes the allegations against him, the current record presents sufficient evidence that Plaintiff is likely to succeed on the merits of her claims brought under 15 U.S.C. § 6851.

Pursuant to the Civil Action Relating to Disclosure of Intimate Images, ("CARDII"), 15 U.S.C. § 6851(b)(1)(A):

> an individual whose intimate visual depiction is disclosed, in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce, without the consent of the individual,

where such disclosure was made by a person who knows that, or recklessly disregards whether, the individual has not consented to such disclosure, may bring a civil action against that person in an appropriate district court of the United States for relief as set forth in paragraph (3).

1. *Intimate Visual Depictions*

Under CARDII, an "intimate visual depiction" is any photo, video, or other visual image, (*see* 18 U.S.C. § 2256(5)), that depicts, in relevant part, (1) the uncovered genitals, pubic area, or post-pubescent female nipple of an identifiable individual; or (2) an identifiable individual engaging in "sexually explicit conduct." 15 U.S.C. § 6851(a). "Sexually explicit conduct" includes a range of sexual activities between individuals, including "graphic sexual intercourse, such as genital-genital, [and] oral-genital," graphic or simulated lascivious masturbation, or "graphic or simulated lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2)(A)–(B) (incorporated by reference in 15 U.S.C. § 6851(a)(6)). At the hearing, numerous photographs of Plaintiff were introduced into evidence. One or more of these photographs meets the definition of intimate visual depictions under the statute, including photographs where Plaintiff is identifiable that depict the uncovered pubic area and exposed nipple of Plaintiff. Accordingly, the Court finds the Plaintiff likely to succeed in showing that the photographs of her are intimate visual depictions as defined by CARDII.

2. *Disclosed in Interstate or Foreign Commerce*

Under CARDII, the transfer of an "intimate visual depiction" qualifies as "disclosure," as does merely making such depictions "accessible." 15 U.S.C. § 6851(a). This disclosure must be "in or affecting interstate or foreign commerce or using any

means or facility of interstate or foreign commerce" in order to satisfy CARDII.  15 U.S.C. § 6851(b)(1)(A).  The testimony of Plaintiff and her investigator—and her exhibits—tends to show that the e-mail(s) containing her intimate visual depictions originated in the United States, and that the recipients of these disclosures received such disclosures while in a foreign country.  This international transfer falls clearly within the scope of interstate or foreign commerce.  *See United States v. Runyan,* 290 F.3d 223, 239 (5th Cir. 2002) (holding that "[t]ransmission of photographs by means of the Internet is tantamount to moving photographs across state lines and thus constitutes transportation in interstate commerce…."); *see also, United States v. Flocker*, 504 F. App'x 637 (9th Cir. 2013) (holding that the transmission of nude photographs via e-mail between different states was sufficient to invoke federal statute).  Accordingly, the Court finds the Plaintiff likely to succeed in showing that her intimate visual depictions were disclosed "in" or "using [] means or facility of interstate or foreign commerce."  15 U.S.C. § 6851(b)(1)(A).

### 3.  *Nonconsensual Disclosure*

Plaintiff's testimony tends to show that Defendant disclosed intimate visual depictions of Plaintiff *without Plaintiff's consent* which is actionable under 15 U.S.C. § 6851.  At the hearing, Plaintiff testified that she would never have affirmatively shared, nor consented to the sharing, of these intimate visual depictions.  Plaintiff further testified that she requested that Defendant never retain any copies of her intimate visual depictions.  Accordingly, the Court finds that Plaintiff is likely to succeed in showing that Defendant knew that Plaintiff did not consent to her intimate visual depictions being shared with her friends, family, colleagues, and landlord.

5

### 4. *Disclosure by the Defendant*

Plaintiff's evidence—especially the findings of the investigative firm she retained—tends to show that Defendant was the person who possessed and distributed the intimate photographs to her family, friends, colleagues, and landlord. First, Plaintiff's testimony that Defendant was the only person who had the opportunity to capture these intimate photographs tends to show that Defendant was the only person capable of effectuating their disclosure.  Furthermore, the testimony of Plaintiff's investigator, Dan Halpin, tying the numerous online accounts and email addresses utilized in the disclosure to the phone number of Defendant and to the I.P. address of the Defendant's place of employment at the time of the disclosures, tends to show that Defendant was responsible for the disclosure of Plaintiff's intimate visual depictions.

Plaintiff's testimony, along with that of Mr. Halpin, tends to further show that "Leda Mancini" and "Cullen Brennan," two identities involved with the disclosures,[4] were in fact the Defendant acting under pseudonyms.  Mr. Halpin testified that he initiated a two-factor authentication request that tied a Telegram account registered to "Leda Mancini" to Defendant's cell phone number.  Furthermore, Mr. Halpin connected the email addresses associated with "Cullen Brennan" and "Leda Mancini" to the Virtual Private Network ("VPN") of Defendant's former employer by sending a "technical tracking link" to these email addresses.  Once opened, this tracking email relayed back to Mr. Halpin the I.P. address of its terminal location—Defendant's

---

[4] Many of the disclosures were attachments to emails signed "Cullen" and sent from "cullenbrennan@mail.com" and "cullenbrennan@consultant.com."

former employer in Alexandria, Louisiana. As at least one of these intimate image disclosures originated from the email addresses "cullenbrennan@mail.com" and "cullenbrennan@consultant.com," this evidence tends to show that Defendant utilized "Cullen Brennan" as a false persona to distribute these intimate photographs. Accordingly, the Court finds that Plaintiff is likely to succeed in showing that Defendant disclosed her intimate visual depictions.

Considering the statutory elements of CARDII and Plaintiff's evidence in support, the Court finds that Plaintiff has demonstrated a likelihood to succeed on the merits of her CARDII claim. *See McCann v. McCann*, No. 2:23CV0028 DAK, 2023 WL 4934115, at *1 (D. Utah Aug. 2, 2023) ("By posting Plaintiff's private intimate images online without Plaintiff's consent, Defendant violated 15 U.S.C. § 6851.").

## B. Irreparable Harm

Plaintiff has demonstrated the imminent risk of further nonconsensual disclosures of intimate visual depictions of herself and humiliation from the same. Plaintiff testified that following her demand/cease-and-desist letter sent February 6, 2024, Defendant has made several attempts to contact Plaintiff, including texting her; sending an email explaining that he is "on the verge of suicide to save us both" followed by a poem; nominating her for a "Compassionate Leader" award; and attempting to send her $200 via Cash App. This, along with the disclosures in August 2023, November 2023, and January 2024 following Plaintiff's rejection of Defendant's communication attempts, shows that Defendant is continuing to attempt to engage Plaintiff without her consent and is likely to escalate to further disclosure of her intimate visual depictions in the future. Additionally, while not intimate, Defendant

surreptitiously captured several photographs of Plaintiff using his cellular phone while she was testifying in the preliminary injunction hearing. This behavior, along with his cyclical pattern of escalating contact with Plaintiff followed by disclosure, tends to show that Defendant poses an imminent risk of dissemination of Plaintiff's intimate visual depictions. Accordingly, the Court finds that Plaintiff has demonstrated an immediate risk of irreparable harm in the absence of injunctive relief.

### C. Balance of Equities

The balance of harms among the parties weighs in favor of Plaintiff and against Defendant. The impact of revenge porn can include public shame and humiliation, an inability to find new romantic partners, mental health effects such as depression and anxiety, job loss or problems securing new employment, and offline harassment and stalking. *See* Danielle K. Citron & Mary Anne Franks, *Criminalizing Revenge Porn*, 49 Wake Forest L. Rev. 345 (2014). Furthermore, once disseminated, it is challenging to completely remove these images from the internet. *See* Amanda L. Cecil, *Taking Back the Internet: Imposing Civil Liability on Interactive Computer Services in an Attempt to Provide an Adequate Remedy to Victims of Nonconsensual Pornography*, 71 Wash. & Lee L. Rev. 2513, 2515–16 (2014). The Court can see no harm to Defendant in foregoing further distribution or display of Plaintiff's intimate photographs. On the converse, the Court can foresee a great deal of harm to Plaintiff should intimate visual images of her continue to be disseminated. Accordingly, the balance of equities weighs heavily in favor of an injunction.

### D. Public Interest

There is no harm to the public in granting the requested relief.  First, the statute under which Plaintiff seeks relief expressly contemplates the issuance of injunctive relief: "The court may, in addition to any other relief available at law, order equitable relief, including a temporary restraining order, a preliminary injunction, or a permanent injunction ordering the defendant to cease display or disclosure of the visual depiction." 15 U.S.C. § 6851(b)(3)(A).   Further, the public has a strong interest in preventing the nonconsensual dissemination of another's intimate visual images, more commonly known as "revenge porn," as evidenced by Congress's careful and explicit creation of this statutory cause of action to protect persons from this insidious form of harassment.  *See* CONGRESSIONAL RESEARCH SERVICES.  (May 22, 2023).  *The 2022 Violence Against Women Act (VAWA) Reauthorization.* (CRS Report No. R47570).   https://crsreports.congress.gov/product/pdf/R/R47570.   Many Americans have been victimized by revenge porn.  *See* Amanda Lenhart, Michele Ybarra, & Myeshia Price-Feeney, *Nonconsensual Image Sharing: One in 25 Americans has been a victim of "revenge porn,"* Data and Society Research Institute, Dec. 13, 2016, at 5, https://datasociety.net/library/nonconsensual-image-sharing/.   And the number of victims grows by the day.  *See* Asia A. Eaton & Yanet Ruvalcaba, *Nonconsensual pornography Among U.S. Adults: A Sexual Scripts Framework on Victimization, Perpetration, and Health Correlates for Women and Men*, American Psychological Association & Cyber Civil Rights Initiative, Feb. 4, 2019, at 4, https://www.cybercivilrights.org/wp-content/uploads/2019/03/Psychology-of-

Violence.pdf (showing a 400% increase in the number of revenge porn victims from 2016 to 2019). Accordingly, the public interest favors the issuance of an injunction.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that pursuant to Federal Rule of Civil Procedure 65, Defendant Douglas Constant and all persons in active concert or participation with him are hereby **RESTRAINED, ENJOINED, and PROHIBITED** from directly or indirectly disclosing any intimate images depicting Plaintiff; continuing to display or disclose any intimate images of Plaintiff; destroying any evidence proving any prior disclosure; and disclosing Plaintiff's identity to anyone without permission from this Court.

Pursuant to Fed. R. Civ. P. 65(d)(2), this Preliminary Injunction binds the parties and any other persons in active concert with the parties. This Order is effective immediately and continues through trial in this case or until further order of the Court.

**THUS DONE AND SIGNED** this 23rd day of July, 2024.

**JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT JUDGE**